UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| GUY CHARLES RIZZOTTO,<br> Plaintiff,<br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br> Defendant. | )<br>)<br>) Case No.: 2:10-CV-00118<br>) SENIOR JUDGE WISEMAN<br>) MAGISTRATE JUDGE BROWN<br>)<br>)<br>) |

To: The Honorable Thomas A. Wiseman, Jr., Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed under 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for disability and disability insurance benefits (DIB), as provided under Title II of the Social Security Act ("Act"), as amended. Currently pending before the Magistrate Judge is Plaintiff's Motion for Judgement on the Administrative Record and Defendant's Response. (Docket Entries 13, 14, 15). The Magistrate Judge has also reviewed the administrative record. (Docket Entry 11) (hereinafter "Tr."). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion for Judgement be **DENIED**, and that the decision of the Commissioner be **AFFIRMED**.

## I. INTRODUCTION

Plaintiff protectively filed her application for DIB on August 10, 2007, with an alleged onset of disability on June 24, 2007. (Tr. 92-101, 104). Plaintiff's claim was denied first on December 21, 2007, and again after reconsideration on March 19, 2008. (Tr. 47-50, 55-57). At

1

the Plaintiff's request, an administrative law judge ("ALJ") held a hearing on August 11, 2009. (Tr. 25-43). The Plaintiff, represented by counsel Mark Walker, and a vocational expert ("VE") testified at the hearing. (Tr. 25-43). The ALJ's written decision, dated November 5, 2009, denied Plaintiff's claim. (Tr. 10-24). In his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since June 24, 2007, the alleged onset date of disability (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: morbid obesity and osteoarthritis (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than light work as defined in 20 CFR 404.1567(b). Secondary to his physical impairments, the claimant can: never climb ropes, ladders or scaffolds, occasionally climb ramps and stairs; and occasionally balance, stoop, crouch, kneel and crawl. He is limited to frequent overhead reaching with his right upper extremity. He must avoid concentrated exposure to fumes, odors, dust and gases.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on February 18, 1960, and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional

capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 24, 2007, through the date of this decision (20 CFR 404.1520(g)).

Plaintiff requested review of the ALJ hearing and decision by the Appeals Council ("AC") on November 16, 2009. (Tr. 6-9). Subsequently on November 19, 2010 the AC denied the request stating they found no reason to review the ALJ's decision, rendering the ALJ's decision as the final decision of the Commissioner of Social Security in this case. (Tr.1-5). The Plaintiff timely filed this civil action, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive. *Id*.

## II. REVIEW OF RECORD

The Plaintiff was a 49-year old male at the time of the ALJ's decision, with an alleged onset date of June 24, 2007. (Tr. 104). He has a tenth-grade education and has not obtained a graduate equivalency diploma. (Tr. 28). His past relevant work includes fork lift operator, truck driver, and heavy equipment operator. (Tr. 39).

A. Testimonial Evidence

At his ALJ hearing, the Plaintiff stated he could not work because of swelling in his extremities attributed to gout, problems with his right shoulder, a heart condition, diabetes, narcolepsy, and sleep apnea. (Tr. 29). The Plaintiff reported being 5'3" tall and weighing 436 pounds. He reported being over 400 pounds for five years. (Tr. 33).

Additionally, the Plaintiff reported coughing fits, fainting spells, and fatigue. (Tr. 37-38). The Plaintiff stated he occasionally feels numbness or tingling in his hands and feet. (Tr. 35).

3

These symptoms were also stated in a Disability Report dated August 8, 2007. (Tr. 109).

Regarding the Plaintiff's day-to-day life, the Plaintiff reports that he can only sit for 30 minutes at a time before having to adjust around, can usually stand for about fifteen minutes, and can walk for approximately ten minutes at a time. He stated that he had difficulty lifting anything larger than a five-pound bag of sugar and could not lift anything using his right arm. (Tr. 33, 37-37). The Plaintiff reported having trouble lifting things without incurring pain to the lower back. (Tr. 33). He reported that he does not get out of the house to visit friends and relatives, go to church, or go shopping. (Tr. 32). Occasionally, he attempts to do housework. *Id*.

On August 27, 2007, the Plaintiff completed a questionnaire regarding pain. (Tr. 117-120). He reported pain in his shoulder, neck, lower back, hips, knees and ankles. (Tr. 117, 119). The Plaintiff stated that the pain kept him from standing or walking long distances and also prevented him from cooking, sitting, or doing anything other than light housework. (Tr. 120). On February 13, 2008, in an updated pain questionnaire, the Plaintiff reported increased pain in his shoulder, back, hip, knee, and ankle. (Tr. 149). He stated the pain required him to cook or do dishes while seated and Ibuprofen did not work even when taken three times a day. (Tr. 149-150).

The Vocational Expert ("VE"), Diane Haller, testified that Plaintiff had previously worked as a forklift operator, heavy equipment operator, and a truck driver. (Tr. 39). She said that the Plaintiff's prior work was classified as semi-skilled and medium; however, because the Plaintiff's file stated that he would have to lift sometimes up to 100 pounds, his work was classified as heavy and very heavy level of work. (Tr. 39). The ALJ first asked the VE a hypothetical question based on Dr. Nathaniel D. Robinson's report involving a person of the

4

Plaintiff's age, education, and past relevant work, who was able to perform light work as defined by the Regulations, but who could never climb ladders, ropes, or scaffolds and can only occasionally climb ramps or stairs and can only occasionally balance, stoop, crouch, kneel, or crawl. Additionally, the hypothetical person is limited to frequent overhead reaching with this right upper extremity and must avoid concentrated exposure to fumes, odors, dust, and gasses. The ALJ asked whether a person could perform the Plaintiff's past relevant work, and the VE said no, that it was beyond the light level. (Tr. 40). The ALJ then asked if there was any other work that such a person could perform and the VE stated that this individual could perform the job of a cashier. (Tr. 40). The VE testified that in Tennessee there are 26,000 jobs and 1.3 million jobs in the U.S. economy that fit in this classification. (Tr. 40).

The ALJ then asked a hypothetical question based on the Consultative Examination of Dr. Michael T. Cox and the testimony of the Plaintiff regarding a sit/stand option that he requires. (Tr. 40). The ALJ asked if a person of similar age, education, and similar past work as the Plaintiff were required a sit/stand option where he can stand for fifteen minutes every half hour, would there be any work in the national or regional economy that such a person could perform. (Tr. 41). The VE stated that the only job available would be a receptionist. The VE added that there would be 700 jobs in Tennessee and approximately 45,000 jobs in the U.S. economy. (Tr. 41).

Lastly, the ALJ asked the VE if she were to assume that due to a combination of medical conditions and associated pain, this person is unable to engage in sustained work activity on a regular and continuing basis for eight hours a day, five days a week for forty-hours a week or equivalent work schedule, if competitive work at all exertional levels be precluded for such an

individual. (Tr. 41). The VE testified that work at all levels would be precluded. Additionally, the VE stated that most employers allow for two fifteen-minute break periods and most employers would not allow an employee to exceed those break periods. (Tr. 41-42).

B. Medical Evidence

The Plaintiff's medical records show several time periods of treatment from various treating physicians. The earliest medical record in the file is from Dr. Douglas Saslow, on October 28 and November 4, 1999. (Tr. 219-221). Dr. Saslow diagnosed the Plaintiff with diabetes mellitus, chest pain, morbid obesity, lower extremity venostasis and hypertension. (Tr. 218-219). Dr. Saslow also had a long discussion with the Plaintiff regarding weight reduction to help with his problems, which are all exacerbated by his morbid obesity. Although the Plaintiff appeared to his treating physician to be "agreeable" with the advice provided, he did not appear to be "motivated" to follow the advice he received. (Tr. 219).

Before his alleged onset date, the Plaintiff had also been treated by GMS Florida West Coast, Inc. since February 16, 2005. The Plaintiff had been assessed with type II diabetes mellitus, GERD, HTN, CHF, edema, COPD, morbid obesity, hypersomnolence, fatigue, sleep apnea and OA. (Tr. 335-367).

The records also reflect treatment with Dr. Marian Menezes of the Florida Medical Clinic. (Tr. 222-234, 248-282, 285-320). Dr. Menezes diagnosed Mr. Rizzotto with severe obstructive sleep apnea, obesity, Pickwickian syndrome, and early chronic pulmonary disease. (Tr. 224). A later Pulmonary Function Test was performed on September 6, 2005, showing that all lung volumes were decreased and there was an isolated decrease in expiratory reserve volume consistent with morbid obesity. (Tr. 229).

The Plaintiff saw Dr. Menezes on December 6, 2005, and was diagnosed with severe obstructive sleep apnea, morbid obesity, mild chronic obstructive pulmonary disease, and cor pulmonale. (Tr. 257-258). The Plaintiff followed his care with Dr. Menezes on June 7, 2006, and was then diagnosed with shortness of breath, morbid obesity, severe obstructive sleep apnea, mild chronic obstructive lung disease and cor pulmonale. (Tr. 253-254). The Plaintiff continued to defer gastric bypass surgery, despite the fact that the physician "strongly recommended the procedure." (Tr. 253).

On April 20, 2005, the Plaintiff underwent a sleep study that revealed severe obstructive sleep apnea. (Tr. 231-234). The Plaintiff received prescriptions for Provogil and Modafinil to help with daytime drowsiness, and a continuous positive airway pressure ("CPAP") machine to treat sleep apnea. The Plaintiff tolerated the CPAP, which improved his sleep apnea. (Tr. 250, 252, 253, 258).

On October 14, 2007, the Plaintiff was examined by Dr. Michael T. Cox, a consultative examiner. (Tr. 330-334). Dr. Cox noted the Plaintiff's statement that the Plaintiff could not work because of "diabetes, obesity, back and shoulder problems, bladder problems, neck pains, narcolepsy,[1] chronic bronchitis, sleep apnea and high blood pressure" as well as arthritis, incontinence and leg pain experienced when the Plaintiff tries to stand for more than fifteen minutes. (Tr. 330-331). The Plaintiff also reported to Dr. Cox that he suffered from limited range of motion in his right shoulder, shortness of breath, wheezing, coughing and dyspnea after

---

[1] The ALJ erred by stating that there was no medical evidence of narcolepsy in the record and was first mentioned in testimony at the hearing. (Tr. 16). The ALJ later correctly stated that Dr. Cox's consultative examination indicated the Plaintiff's mention of narcolepsy as a problem. (Tr. 18, 330).

7

walking thirty to forty feet. (Tr. 331-332). Dr. Cox's examination revealed chronic lower back pain and hip pain, probably related to osteoarthritis, chronic lymphedema, right shoulder pain status post arthroscopic surgery in 2001, chronic obstructive pulmonary disease, urinary incontinence, morbid obesity, type II diabetes mellitus, essential hypertension, mitral valve prolapse and a past history of congestive heart failure. (Tr. 333). Dr. Cox opined that the Plaintiff could lift up to five pounds frequently, fifteen founds occasionally, could sit for eight hours in an eight hour workday with a break every fifteen minutes, stand for fifteen minutes at a time and a total of two hours in an eight hour workday, and walk for short distances and not more than a total of two hours in an eight hour workday. (Tr. 333-334). Dr. Cox attributed these limitations to chronic obstructive pulmonary disease ("COPD"), which "is also worsened by his general conditioning and obesity. (Tr. 334). Lastly, Dr. Cox states that the Plaintiff cannot use the right arm above the shoulder height. (Tr. 334).

On December 20, 2007, Dr. Nathaniel D. Robinson, M.D., a State agency review physician, prepared a Physical Residual Functional Capacity Assessment on the Plaintiff. (Tr. 368-375). Based on a review of the medical record, Dr. Robinson concluded that the Plaintiff could lift ten pounds frequently, sit for six hours in an eight hour workday, and push and pull without limitation, other than the foregoing weight restrictions. (Tr. 369). Dr. Robinson found that the Plaintiff could never climb ladders, rope or scaffolds, and only occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl. (Tr. 370). Dr. Robinson found the Plaintiff was limited in his ability to use his right arm to reach above his shoulder, but he found no other manipulative visual or communicative limitations. (Tr. 371-372). He also found the Plaintiff would have to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation.

8

(Tr. 372). Dr. Robinson stated that some of the Plaintiff's impairments responded to treatment, yet some were unsupported by the record or were non-severe[2]. (Tr. 375). Dr. Robinson also went on to state that Dr. Cox's medical assessment was "overly restrictive" and not supported by the evidence in the record. (Tr. 374).

Dr. James N. Moore, a general practitioner, provided a Physical Residual Functional Capacity Assessment on March 17, 2008. (Tr. 383-390). Dr. Moore stated that the Plaintiff could lift ten pounds frequently, twenty pounds occasionally, stand or walk for six hours in an eight hour workday, sit for six hours in an eight hour workday, and push and pull without limitation, other than the foregoing weight restrictions. (Tr. 384). Dr. Moore found postural, manipulative, visual, communicative and environmental limitations identical to those set fourth in Dr. Robinson's opinion. (Tr. 385-387). Dr. Moore found the Plaintiff's subjective allegations only "partially credible" because objective findings, including normal spirometry readings, controlled impairments and non-compliance with advice regarding surgery, diet and exercise, did not support the Plaintiff's statements. (Tr. 388, 390).

On May 6, 2009, Wendy Reed, FNP, the Plaintiff's primary care provider, prepared a Medical Source Statement of Ability to Do Work-Related Activities (Physical). (Tr. 392-395). According to Ms. Reed, the Plaintiff could lift ten pounds frequently or occasionally and stand or walk for less than two hours in an eight hour workday due to peripheral artery disease ("PVD"), obesity and "generalized weakness." (Tr. 392). Ms. Reed noted that the Plaintiff could sit for less

---

[2] For instance, Dr. Robinson found that no imaging studies had been performed to investigate the Plaintiff's complaints of pain. Dr. Robinson stated that the Plaintiff's incontinence and sleep apnea responded well to treatment. Lastly, he found that the Plaintiff remained noncompliant with recommendations for gastric bypass surgery.

9

than six hours in an eight hour workday and had limitations on his ability to push or pull. She stated that the Plaintiff could never climb, crouch or crawl, occasionally kneel and frequently balance. (Tr. 393). She noted that the Plaintiff would be limited to reaching over the shoulder occasionally. Finally, Ms. Reed found that the Plaintiff should avoid hazards and exposure to noise, dust, vibration, humidity/wetness, hazards and fumes, odors, chemicals or gases. (Tr. 395).

### III. CONCLUSIONS OF LAW

#### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B.  Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423 (d)(1)(A).  At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1) If the claimant is working and the work constitutes substantial gain activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

The Commissioner's burden at the fifth step of the valuation process can be carried by relying on the medical vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id*. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert (VE) testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and non-severe. *See* 42 U.S.C. § 423 (d)(2)(B).

## C. Plaintiff's Statement of Errors

Plaintiff alleges three errors in the ALJ's decision: (1) the ALJ did not correctly analyze the Plaintiff's obesity at all appropriate steps in the sequential evaluation process; (2) the ALJ did not properly consider the medical opinions of Dr. Cox and Ms. Reed; and (3) the ALJ failed to evaluate the Plaintiff's subjective complaints of pain as defined in 20 CFR 404.1529(c)(1).

**I. The ALJ's evaluation of Plaintiff's obesity at all appropriate steps**

The Plaintiff argues that the ALJ failed to evaluate the Plaintiff's obesity at all appropriate steps in the sequential process. However, the ALJ specifically included obesity as a

listed impairment, properly evaluated the Plaintiff's obesity under all relevant authorities, and relied on opinion evidence from medical sources who knew of and took into account the Plaintiff's obesity.

Social Security Ruling 02-01p ("SSR 02-01p") instructs adjudicators to consider the effects of obesity at each step of the evaluation process, including during assessment of a Plaintiff's residual functional capacity. ("RFC"). SSR 02-01p at *1. The Listings do not include a listing for obesity, however, obesity can be a severe impairment if "it significantly limits an individual's ability to do basic work activities." *See* SSR 02-1p at *4.

The ALJ identified "morbid obesity" as a severe impairment affecting the Plaintiff's ability to work. (Tr. 15-16). However, the ALJ determined that there were no medical findings, even in consideration of obesity, that precisely met or medically equaled the criteria described in any of the listed impairments in the Listing of Impairments. (Tr. 16). Furthermore, the ALJ went on to cite the medical opinions of Dr. Robinson and Dr. Moore in making his RFC finding, and both doctors specifically took obesity into account in their decisions. *See Coldiron v. Commissioner*, 391 Fed. Appx. 435, 443 (6th Cir. 2010) (stating "by utilizing the opinions of these physicians in fashioning [the Plaintiff's] RFC, the ALJ incorporated the effect that obesity has on the Plaintiff's ability to work into the RFC he constructed."). Therefore the Magistrate Judge believes that the ALJ did appropriately evaluate the Plaintiff's obesity at all appropriate steps of the sequential process.

Furthermore, the Plaintiff argues that the ALJ failed to properly evaluate obesity in the sequential process because the ALJ did not incorporate limitations caused by obesity when questioning the vocational expert. The ALJ may rely upon a vocational expert's answer to a

hypothetical question only if substantial evidence supports the assumptions included in the hypothetical question. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (1994). A hypothetical question posed to a vocational expert, however, need not include consideration of a claimant's subjective complaints if the ALJ finds, based upon substantial evidence, that those complaints are not credible. *Cline v. Shalala*, 96 F.3d 146, 150 (1996). Here, the hypothetical questions were based on the medical opinions of Dr. Robinson and Dr. Cox, both of which took obesity into account in making their decisions (Tr. 40). Additionally, though not required, the ALJ included a hypothetical question in regards to the Plaintiff's subjective complaints of pain, which he later dismissed as not credible (Tr. 41). The Magistrate Judge believes, therefore, that the ALJ incorporated the Plaintiff's obesity in the hypothetical questions posed to the VE, and the Plaintiff's claim is without merit.

Lastly, the Plaintiff argues that the ALJ did not properly evaluate the severity of the Plaintiff's obesity as required by SSR 02-1p. SSR 02-1p requires adjudicators to consider the effects of obesity at each step of the evaluation process including during assessment of a plaintiffs RFC. SSR 02-01p at * 1. Additionally, SSR 02-1p requires an individualized assessment of the severity of a claimant's obesity. SSR 02-1p at * 4. Here, the ALJ identified morbid obesity among the Plaintiff's severe impairments. (Tr. 15-16). The ALJ also relied on the judgement of the Plaintiff's physicians to accept the morbid obesity diagnosis, as required by SSR 02-1p. (Tr. 19). However, the ALJ did not find that the Plaintiff's obesity affected his ability to perform work-related tasks so significantly that obesity would preclude all work. (Tr. 16-19). Substantial evidence in the record supports this finding, which accords with SSR 02-1p. Therefore, the Magistrate Judge believes that the ALJ did properly acknowledge the severity of

the Plaintiff's obesity, and thus the Plaintiff's argument is without merit.

## II. The ALJ's consideration of the medical opinions of Dr. Cox and Ms. Reed

Plaintiff argues that the ALJ did not properly evaluate the opinion evidence of Dr. Michael T. Cox and Ms. Wendy Reed, FNP. An ALJ should give enhanced weight to the findings and opinions of treating physicians, since these physicians are the most able to provide a detailed description of a claimant's impairments. 20 C.F.R. § 404.1527(d)(2). Further, even greater weight should be given to a physician's opinions if that physician has treated the claimant extensively or for a long period of time. 20 C.F.R. § 404.1527(d)(2)(I)-(ii). However, if there is contrary medical evidence, the ALJ is not bound by a physician's statement and may also reject it if that statement is not sufficiently supported by medical findings. 20 C.F.R. § 404.1527(d); *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (6th Cir. 1994).

Dr. Cox acted as a consulting physician when examining the Plaintiff on October 14, 2007. (Tr. 330-334). Ms. Reed saw the Plaintiff as a treating physician on numerous occasions from January 15, 2008 through May 19, 2009. (Tr. 392-437). It appears to the Magistrate Judge that the ALJ in the present case properly evaluated the opinions of Dr. Cox and Ms. Reed, yet the ALJ determined that their opinions did not deserve controlling weight. The ALJ stated that "the objective signs and findings in the medical evidence of record do not support limitations more severe than those outlined in the State agency [RFC] assessments." (Tr. 19).

The ALJ pointed to evidence in the record that does not support the degree of limitation set forth in the treating physician's opinions. (Tr. 19). For instance, the Plaintiff worked for many years for up to twelve hours per day, including the period after his most significant symptoms arose. (Tr. 19). In addition, the ALJ deemed the Plaintiff's subjective allegations to be

15

"not fully credible." (Tr. 18-19). These facts undermine the extreme limitations imposed by the Dr. Cox and Ms. Reed and support the ALJ's decision not to accord those opinions controlling weight.

Therefore, the ALJ's evaluation of their opinions was proper because the ALJ "may reject [physician's statements] if that statement is not sufficiently supported by medical findings." 20 C.F.R. § 404.1527(d); *Cutlip*, 25 F.3d at 284. Additionally, in contrast to the opinions of Ms. Reed and Dr. Cox, the ALJ properly evaluated the State agency opinions because they did have support from the record. (Tr. 19). The Magistrate Judge believes that the ALJ correctly weighed and interpreted Dr. Cox, Ms. Reed, and the State agency's opinions in assessing the Plaintiff's RFC.

### III. The ALJ's consideration of Plaintiff's subjective claims of pain

The Plaintiff argues the ALJ did not properly evaluate the Plaintiff's subjective complaints of pain. The Magistrate Judge believes, however, that the ALJ's decision references all relevant factors to support his credibility determination regarding the plaintiff's subjective complaints.

An ALJ's finding on the credibility of a Plaintiff is to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing the witness's demeanor and credibility. *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997) (citing 42 U.S.C. § 423 and 20 C.F.R. 404.1529(a)). Discounting the credibility of a claimant is appropriate where the ALJ finds contradictions from medical reports, Plaintiff's other testimony, and other evidence. *Id*. Also, an ALJ's adverse credibility finding may be supported by the Plaintiff's failure to seek significant medical treatment. *Blacha v. Secretary of H.H.S.*,

927 F.2d 228, 231 (6th Cir. 1990). Like any other factual finding, however, an ALJ's adverse credibility finding must be supported by substantial evidence. *Doud v. Commissioner*, 314 F. Supp. 2d 671, 678-79 (E.D. Mich. 2003).

The ALJ first notes reasons to doubt the Plaintiff's credibility regarding his pain due to the objective signs and findings in the medical evidence. (Tr. 19). For instance, the medical records do not support limitations more severe than those outlined in the State agency residual functional capacity assessments. *Id*. The ALJ also noted that the Plaintiff worked for several years (up to 12 hours per day) after the most significant findings in the medical evidence of record. *Id*. The ALJ noted the lack of "clear neurological symptoms" in the medical record as well as the lack of spinal cord problems. (Tr. 18). Lastly, the ALJ specifically stated that the Plaintiff appeared to be exaggerating his symptoms when he came to the hearing with an unprescribed walker, and cried out in pain when asked to raise his hand to be sworn in. (Tr. 19).

Additionally, the ALJ relies on the Plaintiff's failure to seek medical treatment as another reason for discounting the Plaintiff's credibility. The ALJ stated that the claimant has not had x-rays or other diagnostic tests to aid in treatment to his back pain. (Tr. 18). Furthermore, the record continuously shows the Plaintiff's failure to head the advice of physicians, which continuously advises that he address his weight problems through diet, exercise, or surgery. (*See, e.g.*, Tr. 219, 221, 224, 399-400, 401, 404-405, 410, 412, 418-19, 423, 428, 431, 437). The Magistrate Judge believes that, despite contrary claims of the Plaintiff, there is sufficient objective evidence in the record to support the ALJ's determination that the plaintiff's complaints were not fully credible.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that Plaintiff's Motion for Judgment on the Administrative Record be **DENIED**, and that the decision of the Commissioner be **AFFIRMED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Coward v. Million*, 380 F.3d 909, 912 (6th Cir. 2004 (en banc)).

ENTERED this 9th day of June 2011.

/S/ Joe B. Brown
_____
JOE B. BROWN
United States Magistrate Judge